MIKAL J. CONDON (CSBN 229208)
ANDREW SCHUPANITZ (CSBN 315850)
U.S. Department of Justice, Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
Telephone: (415) 934-5300
mikal.condon@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 17-cr-00297-EMC |
| v. | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO USSG §5K1.1** |
| STEPHEN HODGE, | |
| Defendant. | Date: January 13, 2020<br>Time: 2:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: videoconference |

The government respectfully submits this Sentencing Memorandum pursuant to Federal Rules of Criminal Procedure 32 and Criminal Local Rule 32-5(b).  The government also moves, pursuant to §5K1.1 of the United States Sentencing Guidelines ("USSG"), for a seven-level downward departure from the base offense level of 21 set forth in the plea agreement and the Presentence Report ("PSR"), based on the defendant's cooperation and substantial assistance to the government.  The government also requests that, in order to comport with 18 U.S.C. § 3553 and to avoid unwarranted sentencing disparities, the Court apply a variance proportionate to the one it applied to coconspirator Christopher Lischewski's sentence, based on the Court's assessment of the volume of commerce enhancement in that case.  The government also recommends (1) a term of supervised release, and (2) a criminal fine of $25,000 and a $100 special assessment.  These terms are consistent with the parties' Rule 11(c)(1)(B) Plea Agreement and PSR.

## BACKGROUND

Defendant Stephen Hodge is the second individual and fourth subject to be sentenced by this Court in connection with the United States' investigation into price fixing in the packaged-seafood industry.  On June 28, 2017, Hodge pleaded guilty to knowingly participating in a conspiracy to fix the prices of packaged seafood.  The government has no objection to the PSR and agrees with the summary of the offense conduct contained therein.

The price-fixing conspiracy was carried out through direct competitor communications between high-level executives at the three primary packaged-seafood companies in the United States: Bumble Bee, StarKist, and Chicken of the Sea.  As Hodge testified in detail at trial, beginning in November 2011, he reached agreements with his counterparts at the competition on behalf of his then-employer, StarKist.[1]  In furtherance of that conspiracy, Hodge reached agreements with executives at Chicken of the Sea and StarKist to increase list prices, increase quarterly pricing guidance, and reduce promotional discounts available to customers on grocery

//

---

[1]      Prior to November 2011, StarKist's former VP of Sales and Trade Marketing was in direct communication with executives at Bumble Bee.  Hodge assumed responsibility for those communications when the other individual left StarKist in September 2011.

store shelves.  He participated in the conspiracy until December 2013, when he was terminated from StarKist for reasons unrelated to the conspiracy.

The government's investigation into the packaged-seafood industry began in July 2015, when it discovered emails between competitors at Bumble Bee and Chicken of the Sea while reviewing a proposed acquisition of Bumble Bee by Chicken of the Sea's parent company. Chicken of the Sea was the first company to begin cooperating in the government's investigation.  Bumble Bee also provided prompt and detailed cooperation.  W. Scott Cameron and Kenneth Worsham, senior executives from Bumble Bee, also cooperated early and quickly agreed to plead guilty to their own participation in the price-fixing conspiracy.[2]

Hodge was the third individual to plead guilty in the government's investigation.  As discussed further below, his subsequent cooperation and acceptance of responsibility were instrumental to the prosecution of his former employer.  Following Hodge's guilty plea, StarKist—the last corporate participant in the conspiracy to plead guilty—entered into plea negotiations with the government.  StarKist pleaded guilty on November 14, 2018 and was eventually sentenced to a statutory maximum fine of $100 million.[3]

Hodge also testified over a period of three days in the criminal trial of Lischewski, the former President and CEO of Bumble Bee.  Hodge was the only StarKist witness who pled guilty and testified at trial, as discussed further below.

## ARGUMENT

**A.     Sentencing Guidelines Calculation**

**1.     Criminal History**

The government agrees with Probation's calculation of the defendant's Criminal History Category as I, because he has no prior criminal history.   (PSR ¶37.)

**2.     Offense Level**

The PSR calculates the total offense level as 21, consistent with the Plea Agreement. (PSR ¶22-32 & Plea Agreement ¶9).  This includes a twelve-level increase for volume of

---

[2]     Cameron and Worsham were the first and second individuals, respectively, to plead guilty in the government's investigation.  Their sentencings are currently set for February 2021.

[3]     *United States v. StarKist Co.*, No. 18-cr-513-EMC.

commerce of more than $600 million but less than $1.2 billion, and a downward reduction of three levels for acceptance of responsibility.  (PSR ¶24, 30-31.)  Under the Guidelines, an offense level of 21 and a Criminal History Category of I result in a sentence ranging from 37 to 46 months.

### 3.      Fine and Restitution

Under USSG §2R1.1(c)(1), the guidelines fine range for an individual shall be from one to five percent of the volume of commerce.  For Hodge, the corresponding fine range is in excess of the $1 million statutory maximum fine for an individual defendant, 15 U.S.C. § 1.  However, the parties have agreed to jointly recommend a criminal fine of $25,000.  (Plea Agreement ¶10.)  Probation agrees.  (PSR, Sentencing Recommendation.)

Under the Clayton Act, 15 U.S.C. § 15, *et seq.*, victims of antitrust offenses may bring civil suits to recover treble damages for antitrust injury.  Victims in this matter have filed civil suits seeking treble damages.  Because Hodge's former employer StarKist is a defendant in those suits pending in the Southern District of California, the parties have agreed not to seek an order of restitution.  (Plea Agreement, ¶10.)  Probation agrees.  (PSR, Sentencing Recommendation.)

### B.      Basis for Downward Departure for Substantial Assistance

Pursuant to §5K1.1 of the Guidelines, the government moves for a downward departure based on Hodge's substantial assistance to the investigation.  Taking full measure of the considerations outlined in §5K1.1, the government recommends a seven-level reduction, resulting in an Offense Level of 14 and a sentence ranging from 15 to 21 months.  This recommendation for substantial assistance reflects the extraordinary cooperation provided by Hodge in the government's packaged-seafood investigation and prosecution of StarKist and Lischewski.

The timing, significance, nature, and extent of Hodge's cooperation warrant a seven-level downward departure.  *See* U.S.S.G. 5K1.1(a)(1)-(3)&(5).  Hodge was the third individual to enter into a plea agreement with the government and the first and only StarKist participant in the conspiracy to cooperate in the government's investigation or testify at trial.

//

As the sole StarKist witness, Hodge provided extensive and valuable information to the government throughout the investigation.  Hodge met personally with the government on multiple occasions and testified in front of the grand jury.

Hodge's cooperation in these interactions with the government was consistently timely, credible, and reliable.  He was forthright and spoke with candor and accepted full responsibility for his conduct.[4]  Over the course of two-and-a-half years, Hodge diligently prepared for several meetings with the government by reviewing documents to refresh his recollection and meeting with his counsel.  In addition to providing invaluable information about the underlying criminal conspiracy during interviews, including his own and StarKist's role therein, Hodge explained the workings of the packaged-tuna industry generally.  The information he provided was detailed, corroborated by other sources, and materially advanced the government's understanding of a complex industry.  Hodge's cooperation and testimony were essential to achieving StarKist's guilty plea and $100 million fine.  Hodge approached his cooperation in a serious and conscientious manner and repeatedly expressed his desire to further assist the investigation, a demonstration of his sincere commitment to make amends for his crime.

Finally, the downward departure recommendation reflects the extensive trial testimony provided by Hodge in the *Lischewski* prosecution.  Hodge testified over the course of three days during Lischewski's trial and withstood extensive cross-examination by defense counsel.  As the Court is aware, Hodge's trial testimony was a highly probative component of the government's case-in-chief and was credible, accurate, and reliable.  Hodge described the price-fixing conspiracy and his participation in that conspiracy truthfully and without equivocation.  As the only cooperating StarKist participant in the conspiracy, Hodge's testimony in the *Lischewski* trial was invaluable in corroborating the testimony of Cameron and Worsham, helped to illustrate the pervasiveness of the conspiracy within the industry, and allowed the government to introduce a number of key StarKist exhibits.

//

---

[4]     Although Hodge was not forthcoming during an impromptu visit by the FBI, since that initial interview he has been truthful and candid about the details and extent of his participation in the criminal conspiracy.

1    For these reasons, a seven-level downward departure for substantial assistance is

2 appropriate.

3 **C.     Sentencing Recommendation**

4    Upon calculating the guidelines range and determining the applicability of any departure

5 provisions, the court "shall then consider the applicable factors in 18 U.S.C. § 3353(a) taken as a

6 whole" to determine the final sentence.  U.S.S.G. § 1B1.1(c); *see generally United States v.*

7 *Vasquez-Cruz*, 692 F.3d 1001, 1006 (9th Cir. 2012) (describing three-step sentencing procedure

8 under guidelines).  The government has argued that a guidelines sentence is reasonable and not

9 greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  The most

10 compelling factors weighing in favor of a guidelines sentence are the need for the sentence to

11 reflect the seriousness of the offense, promote respect for the law and provide just punishment,

12 and afford adequate deterrence to future price-fixing conspiracies and white-collar crime

13 generally, as the Court previously recognized.  (Sent'g Tr. 48-53, June 16, 2020, *United States v.*

14 *Lischewski*, No. 18-cr-203-EMC).

15    The government notes that in sentencing Lischewski—the only other individual to have

16 been sentenced to date—the Court applied a substantial downward variance from the Sentencing

17 Guidelines to arrive at a sentence of 40 months from a calculated range of 78 to 97 months.

18 (PSR, Addendum at 2.)  The government respectfully disagreed with a downward variance with

19 respect to Lischewski's sentence.  However, the Court's stated rationale in varying downward

20 for Lischewski should now apply equally to the other participants in the conspiracy, who are all

21 being sentenced under the same provision of the Sentencing Guidelines that uses volume of

22 commerce as a specific offense characteristic.  Therefore, the Court should apply a

23 commensurate variance in the sentences of the cooperating defendants, including Hodge, in order

24 to comport with § 3553 and avoid unwarranted sentencing disparities between coconspirators.

25 //

26 //

27 //

28 //

**CONCLUSION**

For the reasons set forth herein, the United States respectfully requests that the Court grant the motion for a downward departure and impose a sentence consistent with the factors set forth in 18 U.S.C. § 3553, as discussed above, a period of supervised release, a fine of $25,000, a $100 special assessment, and no order of restitution.


Dated: December 23, 2020                                Respectfully submitted,


                                                        /s/ *Mikal Condon*
                                                        MIKAL J. CONDON
                                                        ANDREW SCHUPANITZ
                                                        Trial Attorneys
                                                        U.S. Department of Justice
                                                        Antitrust Division